UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| THERESA L. WEHBY, | } |
| Plaintiff, | } |
| v. | } Case No.: 2:15-cv-01005-RDP |
| SPRINGER EQUIPMENT COMPANY, INC., | } |
| Defendant. | } |

### MEMORANDUM OPINION

This case is before the court on the Motion for Summary Judgment filed by Defendant Springer Equipment Company, Inc. ("Defendant" or "Springer"). (Doc. # 45). The Motion (Doc. # 45) has been fully briefed, and the parties have filed evidentiary submissions. (Docs. # 45, 48, 51, 54). After careful review, and for the following reasons, the court finds that the Motion (Doc. # 45) is due to be granted.

### I. Relevant Undisputed Facts[1]

Springer is a forklift and material handling company that sells, rents, and services forklifts.[2] (Doc. # 45 at ¶ 1). It employed Plaintiff Theresa Wehby ("Plaintiff" or "Wehby") for

---

[1] The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the court's own examination of the evidentiary record. All reasonable doubts about the facts have been resolved in favor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002). These are "facts" for summary judgment purposes only. They may not be the actual facts that could be established through live testimony at trial. *See Cox v. Admr. U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

[2] Instead of directly responding to Defendant's undisputed facts in Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment, Plaintiff included a footnote stating that she disputes Defendant's undisputed material facts and that her "Undisputed Facts will clearly demonstrate her disputes with Defendant['s] facts." (Doc. # 48 at p. 2 n.1). However, Plaintiff's undisputed facts do not "clearly demonstrate her disputes." In fact, Plaintiff does not once mention herself or that she was employed by Springer throughout her recitation of undisputed facts.

billing purposes from March 2003 through August 2014. (Docs. # 18 at ¶ 12; 45 at ¶ 2; 45-2 at p. 65). Plaintiff has filed a claim against Springer, alleging that it violated the Rehabilitation Act, 29 U.S.C. § 794, because the company failed to accommodate her request for a certain parking place and, as a result, she suffered a knee injury in July 2014. (Docs. # 18 at p. 6-9; 45 at ¶ 3; 45-2 at p. 298-300; 45-3 at ¶ 9-11).

Prior to Wehby's departure from Springer in August 2014, Springer entered into government-related transactions, which involved the Federal Emergency Management Agency ("FEMA") of the U.S. Department of Homeland Security. (Docs. # 45 at ¶ 12; 45-4 at ¶ 13). In April 2011, Springer entered into a procurement contract with FEMA to assist with disaster relief efforts related to tornado damage in Tuscaloosa, Alabama. (Docs. # 45 at ¶ 7; 45-4 at ¶ 4; 51 at ¶ 14; 51 at ¶ 14). Under that contract, FEMA leased equipment from Springer at standard rates using Springer's standard price list. (Docs. # 45 at ¶ 8; 45-4 at ¶ 5, 7-8). In 2005 or 2006, Springer charged FEMA its standard rates for completed work for FEMA in connection with Hurricane Katrina relief efforts. (Docs. # 45 at ¶ 10-11; 45-4 at ¶ 10-12).

Springer is also certified under the Small Business Administration ("SBA") and is considered a Small Business Concern ("SBC") and a Woman-Owned Small Business Concern ("WOBC"). (Docs. # 51 at ¶ 13-14; 51-14 at p.6; 54 at p. 10). Because of these statuses, Springer has received protected procurement contract awards and has qualified for some set-aside contract awards. (Docs. # 51 at ¶ 8, 15; 51-11). For instance, in November 2012, Springer entered into a subcontracting agreement with Raytheon with the help of the SBA's Subcontractor Assistance Program.[3] (Docs. # 51 at ¶ 24-25; 51-14).

---

(*See id.* at p. 2-12). Plaintiff's format for presenting the facts of this case in her response (Doc. # 48) is not only confusing but also is in violation of the court's Initial Order (Doc. # 5 at p. 3-4).

[3] Defendant argues that Plaintiff has not provided evidence that Springer's contract with Raytheon arose from the Subcontractor Assistance Program. (Doc. # 54 at p. 10). In support of her contention that this contract was secured

2

In its Motion for Summary Judgment, Defendant argues that Springer is not subject to the Rehabilitation Act. (Doc. # 45). Plaintiff counters that Springer is subject to the Rehabilitation Act because the company "availed itself of federal remedial programs." (Doc. # 48 at p. 1). Accordingly, this dispute centers on whether Defendant may be liable to Plaintiff under the Rehabilitation Act.

## II.     Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323. Once the moving party has met its burden, Rule 56 requires the non-moving party to go beyond the pleadings and -- by pointing to affidavits, or depositions, answers to interrogatories, and/or admissions on file -- designate specific facts showing that there is a genuine issue for trial. *Id.* at 324.

The substantive law will identify which facts are material and which are irrelevant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *See Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1314 (11th Cir. 2007); *Fitzpatrick v. City of Atlanta*, 2 F.3d

---

through the Subcontractor Assistance Program, Plaintiff has provided the court with Springer's subcontracting agreement with Raytheon and points to a paragraph in that agreement that references Section 8(d) of the Small Business Act, which is codified at 15 U.S.C. § 637(d). (Docs. # 51 at ¶ 24; 51-14 at p. 8). Plaintiff asks the court to use this reference to Section 8(d) to infer that this agreement with Raytheon was governed by the Subcontractor Assistance Program. (Doc. # 51 at ¶ 24).

1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *See id.* at 249.

When faced with a "properly supported motion for summary judgment, [the non-moving party] must come forward with specific factual evidence, presenting more than mere allegations." *Gargiulo v. G.M. Sales, Inc.*, 131 F.3d 995, 999 (11th Cir. 1997). As *Anderson* teaches, under Rule 56(c) a plaintiff may not simply rest on his allegations made in the complaint; instead, as the party bearing the burden of proof at trial, he must come forward with at least some evidence to support each element essential to his case at trial. *See Anderson*, 477 U.S. at 252. "[A] party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 248 (citations omitted).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Sw. Airlines Co.*, 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (citing *Anderson*, 477 U.S. at 250-51).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one

4

party must prevail as a matter of law.'" *Sawyer*, 243 F. Supp. 2d at 1262 (quoting *Anderson*, 477 U.S. at 251-52); *see also LaRoche v. Denny's, Inc.*, 62 F. Supp. 2d 1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion, and belief cannot be used to defeat a motion for summary judgment.").

**III.    Analysis**

Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). "To prove discrimination under the Act, a plaintiff must show that he or she: (1) is 'handicapped' within the meaning of the Act and relevant regulations, (2) is 'otherwise qualified' for the position in question, (3) *worked for a Program or activity that received federal financial assistance*; and (4) was adversely treated solely because of his or her handicap." *Jackson v. Veterans Admin.*, 22 F.3d 277, 278 (11th Cir. 1994) (emphasis added). Here, Defendant argues that summary judgment is due to be granted because it is not a recipient of federal financial assistance. (Docs. # 45; 54). Plaintiff counters that Springer is a recipient of federal financial assistance for two main reasons: (1) Springer availed itself to SBA certifications and, as a certified entity, received procurement assistance and restricted contract awards and (2) the value of Springer's Tuscaloosa FEMA contract was doubled. (Doc. # 51). The court examines these arguments, in turn.

"For a private corporate employer to be subject to § 504, either the corporation 'as a whole' must receive federal financial assistance, or the geographically separate facility at which the employee is employed must receive such federal assistance." *Jones v. Ala. Power Co.*, No.

CV 94-PT-0094-S, 1995 WL 238338, at *18 (N.D. Ala. Jan. 3, 1995), *aff'd*, 77 F.3d 498 (11th Cir. 1996) (quoting 29 U.S.C. § 794(b)(3)). Courts apply the ordinary meaning of the term "federal financial assistance" because it is not defined in the Rehabilitation Act. *Shotz v. Am. Airlines, Inc.*, 323 F. Supp. 2d 1315, 1317 (S.D. Fla. 2004), *aff'd*, 420 F.3d 1332 (11th Cir. 2005). "The general rule is that 'federal financial assistance' is the payment or transfer of funds as a subsidy or gift." *Mullins v. Crowell*, 74 F. Supp. 2d 1067, 1135 (N.D. Ala. 1999), *aff'd in part, rev'd in part on other grounds*, 228 F.3d 1305 (11th Cir. 2000); *see Shotz*, 323 F. Supp. 2d at 1317-19 (holding that airlines that received federal funds under the Stabilization Act as compensation for losses from terrorist attacks did not receive federal financial assistance).

Plaintiff's argument that Springer is a recipient of federal financial assistance because it has SBA certifications and received procurement and restricted contract awards, such as the FEMA and Raytheon contracts, is unavailing. No sensible reading of the Rehabilitation Act or case law interpreting the Act suggests that qualifying for SBA certifications, on its own, equates to receipt of federal financial assistance. *Cf. U.S. Dep't of Transp. v. Paralyzed Veterans of Am.*, 477 U.S. 597, 605 (1986) ("Congress limited the scope of § 504 to those who actually 'receive' federal financial assistance because it sought to impose § 504 coverage as a form of contractual cost of the recipient's agreement to accept the federal funds."); *Herman v. United Bhd. of Carpenters & Joiners of Am., Local Union No. 971*, 60 F.3d 1375, 1381 (9th Cir. 1995) (finding that, although "certification is similar to licensing and . . . some federal licenses may . . . provide benefits that are as valuable as direct financial assistance," the receipt of a federal license and, in turn, a federal certification "is insufficient to invoke application of the Act"); *Lemmo v. Willson*, 583 F. Supp. 557, 560 (D. Colo. 1984) (holding that a federal agency's certification of the defendant's apprenticeship program did not constitute federal financial assistance). Similarly,

courts in the Eleventh Circuit have "refuse[d] to extend the definition of 'federal financial assistance' to include procurement contracts." *Jones*, 1995 WL 238338, at *19; *see Arline v. Sch. Bd. of Nassau Cty.*, 772 F.2d 759, 762 (11th Cir. 1985), *aff'd and remanded sub nom. Sch. Bd. of Nassau Cty., Fla. v. Arline*, 480 U.S. 273 (1987) ("We agree that when the federal government makes payments for obligations incurred as a market participant such payments do not constitute 'federal assistance.'"). Furthermore, the Department of Justice's governing regulations concerning § 504 explicitly exclude procurement contracts from the definition of "federal financial assistance."[4] *See* 28 C.F.R. § 41.3(e).

Plaintiff's other argument concerning the cost of and payment for Springer's work with FEMA also misses the mark. Specifically, Plaintiff alleges that FEMA's "contract value was doubled by the SBA because it was for a contract to an SBC in a major disaster area." (Doc. # 51 at ¶ 17-18). In making this allegation, Plaintiff first highlights that FEMA awarded Springer a contract totaling $34,984. (Doc. # 51-13). But Springer's documented accounts receivables related to the FEMA contract only total $15,769 (Doc. # 51-12). (Doc. # 51 at ¶ 17).

---

[4] Under the Department of Justice's regulations, each agency is required to issue regulations (that are consistent with the Department of Justice's coordinating regulations) that implement § 504 and define its relevant terms. *See* 28 C.F.R. § 41.4; *see also Moore v. Sun Bank of N. Fla., N.A.*, 923 F.2d 1423, 1431 (11th Cir. 1991). In defining "federal financial assistance" under Title VI, the SBA includes the following:

> (1) Grants and loans of Federal funds; (2) the grant or donation of Federal property and interests in property; (3) the detail of Federal personnel; (4) the sale and lease of, and the permission to use (on other than a casual or transient basis), Federal property or any interest in such property without consideration, or at a nominal consideration, or at a consideration which is reduced for the purpose of assisting the recipient, or in recognition of the public interest to be served by such sale or lease to the recipient; and (5) any Federal agreement, arrangement, or other contract which has as one of its purposes the provision of assistance.

13 C.F.R. § 112.2(b). Plaintiff argues that the SBA's definition encompasses SBA's policy of providing aid, counsel, and assistance to SBCs and WOBCs. (Doc. # 51 at p. 15-16). However, the only aid, counsel, or assistance that Plaintiff claims Springer received from the SBA was procurement assistance because it qualified as an SBC and a WOBC. (*Id.*). As discussed above, qualifying for a federal certification and being awarded a procurement contract does not equate to federal financial assistance under the Rehabilitation Act.

7

Next, Plaintiff points to (and takes out of context) the language of 15 U.S.C. § 644(f)[5] to conclude that FEMA doubled its payment to Springer.[6] (Doc. # 51 at ¶ 18).

In actuality (and contrary to Plaintiff's legal argument), the government must meet certain goals, or quotas, related to the number of procurement contracts awarded to SBCs, among other SBA designations. *See* 15 U.S.C. § 644(g)(1). The plain language of § 644(f) allows an agency to double the value of a contract awarded to an SBC "*for purposes of determining compliance with the goals for procurement contracts* under subsection (g)(1)(A)" if the SBC is located in a disaster area and the contract relates to work performed in the disaster area. 15 U.S.C. § 644(f)(3) (emphasis added). Sections 644(f) and (g) do not allow an agency to double its payments to SBCs in disaster areas; rather, these sections allow an agency to more easily meet

---

[5] Section 644(f), which concerns contracting preference for SBCs in a major disaster area, provides the following:

> (1) Definition
>
> In this subsection, the term "disaster area" means the area for which the President has declared a major disaster, during the period of the declaration.
>
> (2) Contracting preference
>
> An agency shall provide a contracting preference for a small business concern located in a disaster area if the small business concern will perform the work required under the contract in the disaster area.
>
> (3) Credit for meeting contracting goals
>
> If an agency awards a contract to a small business concern under the circumstances described in paragraph (2), the value of the contract shall be doubled for purposes of determining compliance with the goals for procurement contracts under subsection (g)(1)(A).

[6] As Defendant mentions, Plaintiff incorrectly states that Springer's accounts receivables amount ($15,769) is half of the contract award amount ($34,984). (Doc. # 54 at p. 5). Therefore, Plaintiff's doubling argument does not add up, mathematically or logically.

Defendant provides an explanation for the discrepancy between Defendant's FEMA accounts receivable amount and the contract award, and the Rule 56 evidence shows that explanation is much more likely than Plaintiff's nonsensical reasoning and incorrect reading of 15 U.S.C. § 644. For procurement contracts, such as Springer's FEMA contract, "[t]he government allocates a budget known as a Prime Award and then the contractor bills for work as the work is performed." (Doc. # 54 at p. 5). "The excess funding is then 'deobligated' (zeroed out) to close out the purchase-order in its entirety." (*Id.*). Here, FEMA allocated an award with a budget of $34,984; however, Springer only billed for $15,769. (Docs. # 51-12; 51-13; 54 at p. 5). Defendant's rationale is consistent with the sworn testimony of Theodore Springer, who is a co-owner of Springer. (Doc. # 51-2 at p. 33) ("And if I remember, the [FEMA] work was probably around $19,000 based on an award showing $34,000. I think we [Springer] invoiced about two-thirds of it."). Furthermore, Plaintiff does not provide evidence that Defendant actually *received* the total $34,984 from the FEMA contract award amount.

its federal goals for procurement contracts awarded to SBCs under certain circumstances related to major disasters.

Ultimately, Plaintiff has not "present[ed] substantial evidence from which a jury could conclude that defendant is a recipient of 'federal financial assistance.'" *Jones*, 1995 WL 238338, at *18. In fact, Plaintiff has not provided the court with any evidence that Springer received monetary federal financial assistance (outside of "payments for obligations incurred as a market participant," which "do not constitute 'federal assistance.'"). *Arline*, 772 F.2d at 762. And, Plaintiff's argument that certain non-cash benefits associated with SBA certifications, such as a preference for the award of various contracts, qualify as federal financial assistance[7] holds little weight. *See Herman*, 60 F.3d at 1381 (finding that a federal certification did not constitute federal financial assistance). Because there is no Rule 56 evidence that Defendant received federal financial assistance during the time that it employed Plaintiff, Plaintiff has "fail[ed] to make a showing sufficient to establish the existence of an element essential to" her Rehabilitation Act claim, and summary judgment is due to be granted. *Celotex Corp.*, 477 U.S. at 322; *see* Jones, 1995 WL 238338, at *19.

## IV. Conclusion

For all of these reasons, the court concludes that Defendant's Motion for Summary Judgment is due to be granted. An Order consistent with this Memorandum Opinion will be entered.

---

[7] In making this argument, Plaintiff cites *Delmonte v. Department of Business and Professional Regulation, Division of Alcoholic Beverages and Tobacco of State of Florida*, 877 F. Supp. 1563 (S.D. Fla. 1995). (Doc. # 51 at p. 14-15). The *Delmonte* court found that the training that defendant's officers received from the Federal Bureau of Investigation ("FBI"), the Drug Enforcement Agency, and the Department of Treasury "constituted receipt of Federal financial assistance pursuant to § 504." 877 F. Supp. at 1567. Notably, the court relied on two important facts that significantly distinguish *Delmonte* from this case: (1) 28 C.F.R. § 41.3(e) expressly provides that "[s]ervices of Federal personnel" constitute federal financial assistance and (2) the form used by Defendant to nominate officers to the FBI National Academy "explicitly requests assurances that the State or local law enforcement agency is in compliance with § 504." *Id.* at 1566-67.

**DONE** and **ORDERED** this March 7, 2018.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE